# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

KELVIN WILLIAMS, TONJA HILL-
WILLIAMS, MORHONDA HILL, and
KELVYON HILL,

                    Plaintiffs,

STATE OF WISCONSIN DEPT. OF HEALTH
SERVICES and PROGRESSIVE INSURANCE
COMPANY,

                    Subrogated Plaintiffs,

v.                                                   25-CV-0805

CITY OF MILWAUKEE, KAONNIE WHITLEY,
and NICHOLAS KROPP,

                    Defendants.

---

## DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND JURY DEMAND

---

NOW COME Defendants City of Milwaukee, Kaonnie Whitley, and Nicholas Kropp, by their attorney, Evan C. Goyke, City Attorney, by Meghan McCabe and William Hotchkiss, Assistant City Attorneys, and as and for an answer to plaintiffs' amended complaint, admit, deny, allege, and state as follows:

### <u>NATURE OF ACTION</u>

1.      This is a civil rights action arising out of the violation of Kelvin Williams, Tonja Hill-Williams, Morhonda Hill and Kelvyon Hill's right to substantive due process, secured to them by the Fourteenth Amendment to the Constitution of the United States, based on the reckless initiation, continuation, and conduct of a vehicular pursuit through the streets of Milwaukee that resulted in a crash that caused severe, substantial and permanent injuries to them.

**RESPONSE:** Defendants deny that any reckless or unconstitutional behavior occurred by any defendants.

1

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

**RESPONSE:** Admit.

3.      The Eastern District of Wisconsin is the proper venue for this action because the Plaintiff's claims arose within the geographical boundaries of the Eastern District of Wisconsin within the meaning of 28 U.S.C. § 139l(b).

**RESPONSE:** Admit.

4.      This Court has jurisdiction over this supplemental state claims pursuant to 28 U.S.C. §1367.

**RESPONSE:** Admit.

5.      Pursuant to Wis. Stat. § 893.80(1)(a), the City of Milwaukee, Officer Kaonnie Whitely, Officer Nicholas Kropp and Chief of Police Jeffrey Norman were each served with a "Notice of Injury" dated September 19, 2022, on behalf of the named plaintiffs. Chief Jeffrey Norman was served on September 20, 2022. The City of Milwaukee was served on September 20, 2022. Whitley and Kropp were served on September 23, 2022.

**RESPONSE:** Lack information needed to admit or deny, and therefore deny. Affirmatively assert

that a "Notice of Injury" was served on the City Clerk on September 20, 2022.

6.      Pursuant to Wis. Stat. § 893.80 (1d)(b), the plaintiffs presented a Notice of Claim to the City Clerk of the City of Milwaukee on February 6, 2025. No formal disallowance was received within 120 days of presentment; thus the claim was deemed disallowed on or about June 6, 2025

**RESPONSE:** Lack information needed to admit or deny that plaintiffs presented a Notice of

Claim to the City Clerk on February 6, 2025, or that a formal disallowance was never received,

and therefore deny.

## PARTIES

7.      Plaintiff, Kelvin Williams, is an adult resident of the State of Wiscosin [sic] who resides at 5212 N. 84th Street Milwaukee, Wisconsin 53225. Kelvin is the father of Morhonda and Kelvyon and the husband of Tonja.

**RESPONSE:** Upon the representation of counsel, admit.

2

8.      Plaintiff, Tonja Hill-Williams, is an adult resident of the State of Wisconsin who resides at 5212 N. 84th Street, Milwaukee, Wisconsin 53225. Tonja is the wife of Kelvin.

**RESPONSE:** Upon the representation of counsel, admit.

9.      Plaintiff, Morhonda Hill, is an adult resident of the State of Wisconsin who resides at 819 N. 6th Street, Milwaukee Wisconsin 53225. Morhonda is the daughter of Kelvin and Tonja.

**RESPONSE:** Upon the representation of counsel, admit.

10.      Plaintiff, Kelvyon Hill, is an adult resident of the State of Wisconsin who resides at 1300 E. Kane Street, Milwaukee, Wisconsin 53202. Kelvyon is the son of Kelvin and Tonja.

**RESPONSE:** Upon the representation of counsel, admit.

11.      Subrogated Involuntary Plaintiff, State of Wisconsin Department of Health Services (ForwardHealth), is a subdivision of the State of Wisconsin with its principal office located at I West Wilson Street, Madison, Wisconsin, and is in the health insurance business. At all times relevant hereto, Forward Health has paid medical payments on behalf of the Plaintiffs.

**RESPONSE:** Lack information needed to admit or deny, and therefore deny.

12.      Subrogated Plaintiff, Progressive Insurance Company, is a domestic insurance company, duly organized and existing under and by virtue of the laws of the State of Wisconsin with offices of its registered c/o CT Corporation System, 30 I S. Bedford, Madison Wisconsin 53703 . At all times relevant hereto. Progressive had a policy in full force in effect that covered medical payments on behalf of the Plaintiffs.

**RESPONSE:** Lack information needed to admit or deny, and therefore deny.

13.      Defendants Officer Kaonnie Whitley and Officer Nicholas Kropp, are, on information and belief adult residents of the State of Wisconsin. At all times relevant to this lawsuit, they were "persons" employed by the City of Milwaukee, acting under color of law within the meaning of 42 U.S.C. § 1983 and within the scope of their employment as that term is used in Wis. Stat.§ 895.46. Officer Whitley and Officer Kropp are defendants in both their individual and official capacity.

**RESPONSE:** Admit.

3

14.     Defendant, the City of Milwaukee, Wisconsin is a Wisconsin City with the capacity to sue and be sued in this Court. Defendant, the City of Milwaukee, is liable for the unlawful acts of the individual Defendants because they were acting within the scope of their employment pursuant to Wis. Stat. § 895.46.

**RESPONSE:** Deny any liability or any allegation of wrongful acts. Admit, that for purposes of state law claims, the City of Milwaukee is liable for unlawful acts, but deny that is all that is required for constitutional liability against a municipality.

15.     The Plaintiffs allege that the wrongful acts alleged herein were carried out pursuant to one or more customs or policies of the City of Milwaukee.

**RESPONSE:** Deny.

## FACTUAL ALLEGATIONS

16.     The squad collision that injured the Plaintiffs was caused by the deliberately indifferent and irresponsible acts and omissions of officers of the Milwaukee Police Department.

**RESPONSE:** Deny.

17.     Upon information and belief, on Monday, June 6, 2022, at approximately 5:00 p.m. Milwaukee Police Department Officer Kaonnie Whitley and Officer Nicholas Kropp, Squad 5274 along with Officer Brian Holmes and Officer Matthew Rosen, Squad 5273 conducted stationary directed patrols in the area between 26th and 27th Street on Atkinson Avenue. Both units were driving fully marked Milwaukee Police Department squad cars.

**RESPONSE:** Admit.

18.     Upon information and belief, while conducting directed patrol, the Officers witnessed a black Jeep SUV traveling eastbound on W. Atkinson Avenue at a high rate of speed past their location. .

**RESPONSE:** Admit, and further affirmatively allege that the vehicle was traveling at a high rate of speed, illegally passed on the right, and disregarded a stop sign.

4

19.     Upon information and belief, Officer Whitley, the driver of Squad 5274, and Officer Kropp the passenger of Squad 5274, pulled out of the alleyway eastbound, where they observed the black Jeep SUV travel through a stop sign at W. Roosevelt Drive/W. Atkinson Avenue. Officer Whitley activated his squad car's emergency lights to gain the attention of the driver of the black Jeep SUV to initiate the traffic stop related to municipal traffic ordinance violations.

**RESPONSE:** Admit

20.     Upon information and belief, the black Jeep SUV pulled over and stopped in the area of N. 24th Street/W. Atkinson Avenue.

**RESPONSE:** Admit.

21.     Upon information and belief, Officer Whitley pulled behind the black Jeep SUV and observed that it had a defective passenger side taillamp and no license plate. Officer Holmes and Officer Rosen then arrived to assist in municipal traffic ordinance violation stop.

**RESPONSE:** Admit, and further allege that the vehicle was excessively speeding, passed a vehicle in the bike lane, and disregarded a stop sign.

22.     Officers began approaching the black Jeep SUV to initiate contact with the driver. Upon information and belief, the black Jeep SUV then drove away from the traffic stop at a high rate of speed traveling eastbound on W. Atkinson Avenue. Officers ran back to their squads and proceeded to initiate a high-speed pursuit to catch up with the black Jeep SUV which had been originally stopped for potential municipal traffic violations.

**RESPONSE:**  Admit, and further allege that the vehicle was excessively speeding, passing a vehicle in the bike lane, and disregarding a stop sign prior to being pulled over.

23.     Upon information and belief, Officer Whitley maintains that he activated his emergency lights and sirens and pursued the black Jeep SUV.

**RESPONSE:** Admit.

24.     Upon information and belief, Officer Kropp advised dispatch that they were in pursuit of the black Jeep SUV.

**RESPONSE:** Admit.

25.     Despite the nature of the municipal traffic violations which were the original purpose of the stop, Officer Whitely [sic] and Officer Kropp chose to initiate a dramatic high speed police pursuit in a densely populated area of the City of Milwaukee which was known for serious automobile accidents, such that a later study commission by the City of Milwaukee defined the corridors involved in the accident as part of the High Injury Network. ***See Attached Ex. 1*** (p. 28-41 ).

**RESPONSE:** Deny that Officer Whitley and Kropp chose a "dramatic" pursuit and further allege that the pursuit was not for municipal traffic violations; Defendants further assert that there is not Attached Ex. 1 to the amended complaint and therefore lack information as to Plaintiffs' claim and therefore deny.

26.     The Jeep SUV then turned onto N. Teutonia Ave. and was traveling southbound. Upon information and belief, Officer Whitley and Officer Kropp were approximately two blocks behind the Jeep SUV.

**RESPONSE:** Admit.

27.     As they continued the chase, Officer Whitley and Officer Kropp witnessed the Jeep SUV go airborne as if it was standing vertically on the front bumper and crash.

**RESPONSE:** Defendants lack information as to the Plaintiff's description of the crash, but admit that the Jeep SUV did crash.

28.     After witnessing the Jeep SUV crash, instead of choosing to maintain a proper lookout and observation of the intersection, or to advise Officer Whitley to cease the dangerous high-speed pursuit, Officer Kropp chose to focus on reporting the collision occurring.

**RESPONSE:** Deny.

6

29. Upon information and belief, rather than cease the dangerous high-speed pursuit after witnessing the crash and knowing the Jeep SUV's driving had ceased, Officer Whitley consciously, recklessly and deliberately chose to not only continue to drive at an unsafe and illegal speed, but due to his fixation on the crash he also ignored the red traffic signal they were facing on N. Teutonia Ave. and W. Capitol Dr. as he sped through the intersection without first clearing it.

**RESPONSE:** Deny any allegation of recklessness or fixation. Defendants affirmatively allege that Plaintiff driver failed to lookout. Defendants further affirmatively allege that Plaintiff driver violated Wis. Stat. § 346.19 by failing to yield the right-of-way and immediately driving to the right curb or right-hand edge of the shoulder of the roadway.

30. In so doing, Officer Whitely [sic] and Officer Kropp were travelling at a speed of at least 40 miles per hour.

**RESPONSE:** Defendants lack information as to the exact speed, and therefore deny.

31. Upon information and belief, the posted speed limit on and surrounding the intersection of Teutonia and Capitol was 30 mph.

**RESPONSE:** Defendants lack information and therefore deny.

32. Officer Whitley recklessly and consciously chose to speed through the intersection, during the evening rush hour, at this dangerous rate of speed contrary to the posted limit, despite the fact the Jeep SUV he and Officer Kropp were pursuing had already stopped due to a crash, which they knew.

**RESPOND:** Deny any allegation of recklessness.

33. According to the crash data retrieved, it appears that Officer Whitley decreased his speed from 59.5 mph to 40.3 mph at 2.6 seconds before the collision, but then increased his speed at .8 seconds prior to the collision to 43.7 mph. Upon information and belief, this data demonstrates that Officer Whitley consciously and deliberated [sic] decided to increase the speed of his vehicle prior to the collision as he continued through the intersection.

**RESPONSE:** Defendants lack information as to the crash data retrieved by the Plaintiff, and therefore deny.

34. Officer Whitley had ample and abundant time to recognize the severe risk he created by driving without reducing his speed and focusing on other traffic after witnessing the Jeep SUV crash, rather than continuing his fixation on the pursuit of the Jeep SUV. In so doing,

7

Officer Whitley consciously and culpably refused due regard for others by ceasing his ill-advised pursuit.

**RESPONSE:** Deny.

35.     Officer Kropp had that same opportunity to tell Officer Whitley to cease his ill-advised pursuit in light of the crash and to focus on the road and clearing the upcoming intersection. Likewise, Officer Kropp consciously and culpably focused on the Jeep SUV crash rather than keeping due regard and advising Officer Whitley to cease his pursuit.

**RESPONSE:** Deny.

36.     Officer Whitley and Officer Kropp both knew of the risk of death they created to others and consciously disregarded it.

**RESPONSE:** Deny.

37.     On that same date, Kelvyon Hill, Morhonda Hill and Kelvin Williams were travelling and entered the intersection on N. Teutonia Ave. and W. Capitol drive when the light was green and with the right-of-way.

**RESPONSE:** Admit. Defendants affirmatively allege that Plaintiff driver failed to lookout.

Defendants further affirmatively allege that Plaintiff driver violated Wis. Stat. § 346.19 by failing

to yield the right-of-way and immediately driving to the right curb or right-hand edge of the

shoulder of the roadway.

38.     On the date and at the time of the collision, Kelvyon was operating the vehicle, and Morhonda and Kelvin were passengers.

**RESPONSE:** Admit.

8

39.     Officers Whitley and Kropp consciously ignored their statutory duty of due regard when they sped through red light at the intersection of N. Teutonia Ave and W. Capitol Drive at an excessive rate of speed toward a vehicle which had already stopped due to a crash and struck the 2013 Nissan Rogue carrying Kelvyon Hill, Morhonda Hill and Kelvin WilIiams traveling west on W. Capitol Drive. Officer Whitley struck the Nissan in the rear passenger door causing it to strike a 2019 Infiniti SUV, which was stopped at the traffic lights on W. Capitol Drive facing eastbound.

**RESPONSE:** Deny Plaintiff's characterization of how the accident occurred. Admit that the cars collided. Defendants affirmatively allege that Plaintiff driver failed to lookout. Defendants further affirmatively allege that Plaintiff driver violated Wis. Stat. § 346. 19 by failing to yield the right-of-way and immediately driving to the right curb or right-hand edge of the shoulder of the roadway.

40.     After Kelvyon Hill, Morhonda Hill and Kelvin Williams' vehicle came to a rest while [sic] it was rolled on its side.

**RESPONSE:** Defendants lack information as to the owner of the vehicle, but admit the vehicle did roll on its side.

41.     Upon information and belief, after climbing over his sister, Morhonda, Kelvyon was able to exit the vehicle and assist his father, Kelvin. He then began to yell for someone to help his father, Kelvin, who was trapped inside and unconscious.

**RESPONSE:** Defendants lack information needed to admit or deny, and therefore deny.

42.     After Kelvin Williams was finally extricated from the Nissan, he was transported to Froedtert Hospital with severe personal injuries and in critical condition.

**RESPONSE:** Admit that Kelvin Williams was transported to Froedtert Hospital. Defendants lack information needed to admit or deny the condition of Kelvin Williams, and therefore deny.

43.     Kelvyon and Morhonda Hill were transported to Columbia St. Mary's Hospital with severe personal injuries.

**RESPONSE:** Lack information needed to admit or deny, and therefore deny. Affirmatively assert that the Wisconsin Motor Vehicle Crash Report states that Kelvyon and Morhonda Hill had suspected minor injuries, but that they were not transported.

9

44.    Police officers involved in a high-speed pursuit like the one defendants Officer Whitely and Officer Kropp were conducting are aware that the high-speed pursuit of a target vehicle which is consistently violating traffic signals and speed restrictions, during rush hour, through busy city streets, poses a significant danger to innocent motorists and pedestrians along the route of the pursuit, and the individual defendants pursuing the driver of the Jeep SUV were aware of this danger.

**RESPONSE:** Deny.

45.    Officer Whitley and Officer Kropp were aware of the danger and knew of the risk of harm and potential risk of death the pursuit created to others and chose to consciously disregard it.

**RESPONSE:** Deny that Officers Whitley and Kropp consciously disregarded the risk of harm or potential risk of death.

46.    Officer Whitley and Officer Kropp's conduct as described constitutes criminal reckless disregard or deliberate indifference to a known risk and was a direct and proximate cause of the crash herein.

**RESPONSE:** Deny.

47.    By disregarding the risk, the conduct demonstrates criminal reckless disregard or deliberate indifference to a known risk and was a direct and proximately cause of the squad car collision herein, as well as the sever personal injuries suffered by the occupants, Kelvin Williams, Kelvyon Hill and Morhonda Hill. These severe personal injuries include, but are not limited to, pain and suffering; pecuniary loss; hospital and medical expenses; loss of wages and future income; and other compensable damages, all in an amount to be determined at trial.

**RESPONSE:** Deny.

48.    Police officers involved in a high-speed chase like the one the individual Defendants were conducting have various ways available to them to terminate the pursuit and the ongoing danger to innocent motorists and pedestrians.

**RESPONSE:** Defendants lack information as to what "various way" Plaintiffs are alluding to and therefore deny.

49.    In this case, Officer Whitley and Officer Kropp chose the most dangerous course of conduct to innocent motorists and pedestrians, since they engaged in high-speed pursuits that expanded the danger to innocent motorists (like the Plaintiffs) as well as other pedestrians over significant expanses of time and space.

**RESPONSE:** Deny.

10

50. This conduct creates so much danger to innocent motorists and pedestrians and achieves so little toward any legitimate goal of law enforcement when weighed against the inevitable life-threatening consequences that choosing it reflects intentional disregard for the safety of innocent motorists and pedestrians on the part of the pursuing officers.

**RESPONSE:** Deny.

51. All of the named defendant pursuing officers violated the duty conferred upon them by Wis. section 346.03(5), Stats., "to drive or ride with due regard under the circumstances for the safety of all persons."

**RESPONSE:** Deny.

52. Upon information and belief, since the named defendants continued the pursuit, even after the Jeep SUV crash, by callously speeding through the intersection against their own red light, they did so recklessly in violation of the Milwaukee Police Department Standard Operating Procedure 660 related to Vehicle Pursuits and Emergency Vehicle Operations.

**RESPONSE:** Deny.

53. Upon information and belief, during the pursuit the prevailing traffic, roadway, and environmental conditions on this stretch of road and its known history of collisions such that the risk involved in continuing the pursuit was unjustified.

**RESPONSE:** Deny.

54. Upon information and belief, at no point in time did any supervisor of Officer Whitley and Officer Kropp in charge of monitoring and supervising this chase direct them to stop the chase.

**RESPONSE:** Admit.

55. Ultimately, Officer Whitley was disciplined and was found to have violated Standard Operating Procedure, section 1.05 related to Competence and section 660.35(A)(2), Due regard for all persons when operating as an emergency vehicle. This finding resulted in a suspension for Officer Whitley. ***See attached Ex. 2.***

**RESPONSE:** Defendants affirmatively assert that the amended complaint did not include an

Exhibit 2, but further admit the allegations.

56. The actions of the defendants caused the Plaintiffs, Kelvin Williams, Kelvyon Hill and Morhonda Hills [sic], to suffer substantial, severe and permanent physical injuries and economic damages, including but not limited to lost wages, earning capacity as well as future medical treatment and expenses, for which they seek compensatory damages.

11

**RESPONSE:** Deny any allegation of causation. Lack information needed to admit or deny the remaining allegations, and therefore deny.

57. The actions of the defendants caused Plaintiff Tonja Hill-Williams to suffer the loss of her husband, Kelvin Williams', consortium, society and companionship, as well as his economic support, for which she seeks compensatory damages.

**RESPONSE:** Deny any allegation of causation. Lack information needed to admit or deny the remaining allegations, and therefore deny.

<u>**FIRST CLAIM FOR RELIEF**</u>
**Violation of Substantive Due process Contrary to §1983 – All Defendants**

58. Plaintiffs reallege and incorporate paragraphs nos. 1-57 as if fully incorporated herein.

**RESPONSE:** Reallege and incorporate responses to paragraphs 1 through 57 as if fully incorporated herein.

59. That at all times material hereto, the defendants were employees of the defendant, City of Milwaukee, and were operating a fully marked police vehicle subject to the City of Milwaukee Police Department while in the scope of their employment/agency.

**RESPONSE:** Admit.

60. That at all times, defendants Officer Kaonnie Whitley and Officer Nicholas Kropp were "persons" for the purpose of 42 U.S.C. § 1983 and acted under color of law in proximately causing the collision and the injuries the [sic] Plaintiffs.

**RESPONSE:** Deny any allegation of causation. Admit the remainder of the allegations.

61. The individual Defendants conducted themselves "so recklessly that a trier of fact would be entitled to find subjective knowledge of an unjustifiable risk to human life and conscious disregard of that risk." *Flores v. City of S. Bend*, 997 F3d 725, 729-730 (7th Cir. 2021). In so doing, they violated rights secured to the Plaintiffs by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

**RESPONSE:** Deny.

12

62. That at all times material hereto, the defendants were employees of the defendant City of Milwaukee, and were operating subject to the City of Milwaukee Police Department while in the scope of their employment/agency.

**RESPONSE:** Admit.

63. The City of Milwaukee is liable for the unlawful actions of Officer Kaonnie Whitley and Officer Nicholas Kropp to the extent that each of them was acting within the scope of their employment pursuant to Wis. Stats. § 895.46.

**RESPONSE:** Deny any unlawful actions, and therefore deny any liability.

64. That as a result of the Defendants' conduct violating 42 U.S.C. § 1983, as alleged, caused [sic] the Plaintiffs, Kelvin Williams, Kelvyon Hill and Morhonda Hills, to suffer substantial, severe and permanent physical injuries and economic damages, including but not limited to lost wages, earning capacity as well as future medical treatment and expenses, for which they seek compensatory damages.

**RESPONSE:** Deny.

## SECOND CLAIM FOR RELIEF
### *Monell* Claim for Municipal Liability for Custom or Policy – All Defendants

65. Plaintiffs reallege and incorporate paragraphs nos. 1-64 as if fully incorporated herein.

**RESPONSE:** Reallege and incorporate the responses to paragraphs 1 through 64 as if fully incorporated herein.

66. As indicated previously, the City of Milwaukee Police Department Standard Operating Procedure 660 related to Vehicle Pursuits and Emergency Vehicle Operations [sic]

**RESPONSE:** This paragraph appears to be a typographical error and does not contain a full assertion of any fact, and therefore defendants cannot deny or admit.

67. In Standard Operating Procedure 660, the City of Milwaukee had enacted a policy, custom, or practice permitting officers to engage in high-speed pursuits while in densely populated areas without adequate supervision, training, guidance or consideration for public safety.

**RESPONSE:** Deny.

13

68.     In fact, Officer Whitley was disciplined and was found to have violated Standard Operating Procedure, section 1.05 related to Competence and section 660.35(A)(2): Due regard for all persons when operating as an emergency vehicle. This finding resulted in a suspension for Officer Whitley.

**RESPONSE:** Admit.

69.     Upon information and belief, the City of Milwaukee changed its pursuit policy in 2017 to allow for more police chases and high-speed pursuits related to "reckless" driving. The City of Milwaukee developed a pattern and practice of failing to adequately train its officers on proper pursuit procedures, despite knowledge of prior incidents involving similar conduct.

**RESPONSE:** Deny any allegation of recklessness or any pattern and practice of failing to train.

70.     The City of Milwaukee was deliberately indifferent to the known and obvious consequences of its policies, such that including the risk of serious injury to innocent third parties, like the Plaintiffs.

**RESPONSE:** Deny.

71.     The City of Milwaukee is liable for the unlawful actions of Officer Whitley and Officer Kropp because those actions were caused in substantial part by the customs and policies of the City of Milwaukee within the meaning of *Monell v. Department of Social Services of New York*, 436 U.S. 658, 98 S. Ct.2018, 56 L.Ed.2d 611 ( 1978).

**RESPONSE:** Deny any unlawful actions, and therefore deny any liability

72.     That as a result of the Defendants' conduct violating 42 U.S.C. §1983, as alleged, caused [sic] the Plaintiffs, Kelvin Williams, Kelvyon Hill and Morhonda Hills, to suffer substantial, severe and permanent physical injuries and economic damages, including but not limited to lost wages, earning capacity as well as future medical treatment and expenses, for which they seek compensatory damages.

**RESPONSE:** Deny.

### THIRD CLAIM FOR RELIEF
**Negligence Against All Defendants**

73     Plaintiffs reallege and incorporate paragraphs nos. 1-72 as if fully incorporated herein.

**RESPONSE:** Reallege and incorporate the responses to paragraphs 1 through 72 as if fully incorporated herein.

14

74. By their actions described above, individual Defendants were negligent and reckless in violating due care by speeding through red light at the intersection of N. Teutonia Ave and W. Capitol Drive at an excessive rate of speed toward a vehicle which had already stopped due to a crash, and failing to keep adequate lookout when they entered the intersection .

**RESPONSE:** Deny.

75. The individual Defendants were otherwise negligent.

**RESPONSE:** Deny.

76. As a direct and proximate result of individual Defendants' conduct, they caused the injuries to the Plaintiffs including but not limited to pain and suffering, and to suffer substantial, severe and permanent physical injuries and economic damages, including but not limited to lost wages, earning capacity as well as future medical treatment and expenses all to Plaintiffs' detriment in an amount to be determined at trial.

**RESPONSE:** Deny.

77. The individual Defendants committed the common-law tort of negligent injury when they drove in such a way that they had zero probability of ending their high-speed pursuit of the Jeep SUV in any other way than causing a vehicular crash. *Legue v. City of Racine*, 2014 WI 92, ¶ 143, 357 Wis. 2d 250, 301, 849 N.W.2d 837, 861-62.

**RESPONSE:** Deny.

## FOURTH CLAIM FOR RELIEF
### Vicarious Liability – Section 895.46 Wis. Stats. – All Defendants

78. Plaintiffs reallege and incorporate paragraphs nos. 1-77 as if fully incorporated herein.

**RESPONSE:** Reallege and incorporate the responses to paragraphs 1 through 77 as if fully incorporated herein.

79. That at all times material hereto, the defendants were employees of the defendant City of Milwaukee, and were operating subject to the City of Milwaukee Police Department while in the scope of their employment/agency.

**RESPONSE:** Admit.

15

80. The City of Milwaukee is liable for the unlawful actions of Officer Kaonnie Whitley and Officer Nicholas Kropp to the extent that each of them was acting within the scope of their employment pursuant to Wis. Stats. § 895.46.

**RESPONSE:** Deny any unlawful actions, and therefore deny any liability.

## FIFTH CLAIM FOR RELIEF
**Loss of Society, Companionship, Consortium and Pecuniary Loss**
**Tonja Hill-Williams – All Defendants**

81. Plaintiffs reallege and incorporate herein by reference the allegations of the preceding paragraph nos. 1-80.

**RESPONSE:** Reallege and incorporate herein by reference the responses to paragraphs 1 through 80.

82. That as a result of the Defendants' conduct violating 42 U.S.C. § 1983 , as alleged, as causing severe, traumatic and permanent injuries to her husband, plaintiff, Kelvin Williams, the plaintiff, Tonja Hill-Williams, has suffered injuries and damages including the loss of her husband's society, companionship and consortium; pecuniary loss resulting from his loss of employment and earning capacity; medical expenses and other out-of-pocket expenses all to her detriment in an amount to be determined at trial.

**RESPONSE:** Deny.

83. That as a result of the Defendants' negligent conduct, as alleged, and the severe, traumatic and permanent injuries to her husband, plaintiff, Kelvin Williams, the plaintiff, Tonja Hill-Williams, has suffered injuries and damages including the loss of her husband's society, companionship and consortium; pecuniary loss from his loss of employment and earning capacity; medical expenses and other out-of-pocket expenses all to her detriment in an amount to be determined at trial.

**RESPONSE:** Deny.

## SIXTH CLAIM FOR RELIEF
**Subrogation Interest of Progressive**

84. Plaintiffs reallege and incorporate paragraph nos. 1-83 as if fully incorporated herein.

**RESPONSE:** Reallege and incorporate the responses to paragraphs 1 through 83 as if fully incorporated herein.

16

85.     Upon information and belief at all times pertinent to this action, Progressive had a policy of insurance in full force and effect, which provided payments on the Plaintiffs' behalf for medical and other expenses resulting from claims such as those complained of herein and is therefore a proper party pursuant to Wis. Stat. §803.03(2).

**RESPONSE:** Lack information needed to admit or deny, and therefore deny.

86.     As a direct and proximate result of the above-mentioned conduct, Progressive was required to and, in fact, did pay amounts covered under its insurance policy and may be required to pay additional amounts in the future.

**RESPONSE:** Lack information needed to admit or deny, and therefore deny.

87.     There may be insufficient funds from which to honor any subrogation agreement between the Plaintiffs and Progressive. If so, Progressive's interest is subordinate to the interest of the Plaintiffs; and therefore, Progressive's interest should be honored only after the Plaintiffs are made whole.

**RESPONSE:** Deny as a request for a legal conclusion.

### SEVENTH CLAIM FOR RELIEF
**Subrogation Claim of ForwardHealth**

88.     Plaintiffs reallege and incorporate paragraph nos. 1-87 as if fully incorporated herein.

**RESPONSE:** Reallege and incorporate the responses to paragraphs 1 through 87 as if fully

incorporated herein.

89.     Upon information and belief, at all times pertinent to this action, ForwardHealth had a policy of insurance in full force and effect, which provided payments for the Plaintiffs' behalf for medical and other expenses resulting from claims such as those complained of herein and is therefore a proper party pursuant to Wis. Stat. §803.03(2).

**RESPONSE:** Lack information needed to admit or deny, and therefore deny.

90.     As a direct and proximate result of the above-mentioned conduct, ForwardHealth was required to and. in fact, did pay amounts covered under its insurance policy and may be required to pay additional amounts in the future.

**RESPONSE:** Lack information needed to admit or deny, and therefore deny.

91.     There may be insufficient funds from which to honor any subrogation agreement between the Plaintiffs and ForwardHealth. If so, ForwardHealth's interest is subordinate to the interest of the Plaintiffs, and therefore, ForwardHealth's interest should be honored only after the Plaintiffs are made whole.

**RESPONSE:** Deny as a request for a legal conclusion.

### EIGHTH CLAIM FOR RELIEF
**Punitive Damages – All Defendants**

92.     Plaintiffs reallege and incorporate paragraph nos. 1-91 as if fully incorporated herein.

**RESPONSE:** Reallege and incorporate the responses to paragraphs 1 through 91 as if fully incorporated herein.

93.     That the above-described conduct of the individual Defendants was unlawful, extreme, malicious, outrageous and/or intentional.

**RESPONSE:** Deny.

94.     That such conduct of the individual Defendants was a cause of the Plaintiffs' injuries, losses and damages.

**RESPONSE:** Deny.

95.     At all times material hereto, the individual Defendants acted maliciously or with reckless disregard or deliberate indifference towards human life and in an intentional disregard of the plaintiffs' rights, such as to subject the individual Defendants to punitive damages.

**RESPONSE:** Deny.

96.     That the Defendant, the City of Milwaukee, is liable pursuant to Wis. Stat.§ 895.46 for payment of any judgment, including for punitive damages, entered against the Individual Defendants in this action because they were acting within the scope of their employment and under color of law when they committed the acts described above.

**RESPONSE:** Deny.

### ANSWER TO ALL PRESENT AND FUTURE CLAIMS AND CROSS-CLAIMS

1.     Answering any present and future cross-claims, these answering defendants reassert and incorporate by reference their original answer, including all affirmative defenses.

18

2. These answering defendants deny having sufficient information to form a belief as to the truth of all allegations asserted in any claims and cross-claims.

## AFFIRMATIVE DEFENSES

AS AND FOR AFFIRMATIVE DEFENSES, upon information and belief, defendants allege and state to the court as follows:

1. Plaintiffs may have failed to state a claim upon which relief can be granted.

2. Plaintiffs may have failed to comply with the provisions of Wis. Stat. §893.80(1)(d).

3. The injuries and damages sustained by the plaintiffs, if any, may have been caused in whole or in part by the acts or omissions of the plaintiffs.

4. If the plaintiffs did in fact sustain the injuries and damages alleged (or any other injuries or damages), such injuries and damages were sustained as a direct and proximate result of the plaintiff's own negligence or the negligence of others, and through no fault or negligence on the part of the defendants.

5. The City of Milwaukee may be entitled to immunity for its legislative, quasi-legislative, judicial, and quasi-judicial acts and it is further immune from liability for the discretionary acts of its employees.

6. The conduct attributable to the individual defendants did not constitute any violation of a cognizable constitutional right, and this action must be summarily dismissed.

7. Defendants reserve all other affirmative defenses that may be waived if not pled, and the right to amend this answer and assert additional defenses as discovery proceeds.

8.     Injuries allegedly sustained by plaintiffs may have been caused by third parties or other factors, including superseding and intervening causes, including, but not limited to, the driver of the fleeing vehicle, and are not the responsibility of the defendants.

9.     Plaintiffs may have failed to mitigate their damages.

10.     Damages on any claim based on municipality liability for motor vehicle accidents are limited to $250,000 pursuant to Wis. Stat. § 345.05(3);

11.     Wis. Stat. § 346.03 allows an authorized emergency vehicle to disregard various rules of the road in specific circumstances.

12.     The decision to initiate or continue a pursuit is a discretionary act entitled to immunity under Wis. Stat. § 893.80(4), *Estate of Cavanaugh by Cavanaugh v. Andrade*, 202 Wis. 2d 315, 319 (1996).

13. Defendant may be entitled to qualified immunity against Plaintiff's claims;

WHEREFORE, the defendants demand judgment as follows:

1.     Dismissing the complaint of the plaintiff on its merits, together with costs and disbursements.

2.     For such other relief as the court may deem just and equitable.

## JURY DEMAND

Defendants demand a trial by jury of all issues so triable.

Dated and signed at Milwaukee, Wisconsin this _____ day of August, 2025.

EVAN C. GOYKE
City Attorney

s/ Meghan McCabe
MEGHAN MCCABE
Assistant City Attorney
State Bar No. 1132740
mcmccab@milwaukee.gov

s/ William Hotchkiss
WILLIAM HOTCHKISS
Assistant City Attorney
State Bar No. 1112878
whotch@milwaukee.gov

**P.O ADDRESS:**
200 East Wells Street
City Hall 800
Milwaukee, WI 53202
414-286-2601 – Telephone
414-286-8550 – Facsimile

*Attorneys for Defendants*

21